UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

In re:

MAKRIS, KALLIOPI,

    Debtor.

Civ. No. 2:9-005911 (WJM)

OPINION

HON. WILLIAM J. MARTINI

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Debtor Kalliopi Makris's ("Makris") appeal from an order entered on October 14, 2009 by the Honorable Novalyn Winfield, United States Bankruptcy Judge (the "2009 Order"), allowing attorneys' fees and costs to Amboy National Bank ("Amboy"). This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a). For the reasons state below, the decision of the Bankruptcy Court is **AFFIRMED**.

**I. Background**

In 1987, Amboy agreed to provide Makris with financing for the purchase of a home. This agreement was memorialized in a note executed by the parties (the "Note"). Under the Note, Makris agreed to be liable for any reasonable costs or fees – including attorneys' fees – that Amboy incurred in enforcing the Note in the event of default.

Makris defaulted in 2000, and Amboy agreed to a modification of the Note on the condition that Makris provide additional security for the debt. In satisfaction of that agreement, Makris's employer, Dr. Benjamin Levine ("Levine"), issued a personal Gauranty to Amboy that he would be liable for the debt in the event of default (the "Gauranty"). Makris was not a party to the Gauranty.

In 2002, Makris again defaulted, and Amboy sought payment from Levine, eventually bringing suit in the Superior Court of New Jersey to enforce the Guaranty (the "Levine litigation"). Amboy then commenced foreclosure proceedings against Makris, and Makris filed for Chapter 13 bankruptcy (collectively, the "Makris litigation"). A Chapter 13 plan for repayment was confirmed on April 16, 2004.

As part of its claim against the bankruptcy estate, Amboy sought reimbursement for fees arising out of both the Makris litigation *and* the Levine litigation, arguing that the fee provision of the Note made Makris responsible for the fees and costs associated with both litigations. The Bankruptcy Court agreed and issued an order (the "2005 Order") deeming that Amboy had a first mortgage lien against Makris of $172,706.20, which included over $60,000 in fees and costs from both the Makris litigation and the Levine litigation from their inception until August 22, 2005.

Makris appealed in 2008. On appeal, Judge Debevoise's held that the Note did not obligate Makris to be responsible for the fees from the Levine litigation, reversed the award as to those fees, and remanded for a new determination of the proper fee allocation. On remand, Amboy applied for $92,614.46 in fees and costs. Amboy claimed the new application included none of the fees from the Levine litigation. But the

application did include fees and costs incurred in the Makris litigation for the period of November 7, 2003, through July 31, 2009, including the fees and costs associated with litigating whether or not Makris was responsible for the fees from the Levine litigation (the "Fees-on-Fees litigation").

After hearing argument from the parties and making some reductions and disallowances, the bankruptcy court ordered $54,093.75 in fees and costs, including some portion of the Fees-on-Fees litigation (the "2009 Order").

## II. Legal Analysis

The parties identify three issues presented on appeal: (1) whether the Bankruptcy Court erred as a matter of law by failing to abide by Judge Debevoise's Order; (2) whether the Bankruptcy Court abused its discretion by awarding fees that were unreasonable; and (3) whether the Bankruptcy Court erred as a matter of law by allowing Amboy to recover attorneys' fees for legal services incurred on issues decided adversely to Amboy. The Court will address each issue. Because the first two issues overlap, the Court will analyze them together.

### a. The Bankruptcy Court abided by Judge Debevoise's Order.

First, Judge Debevoise's Order reversed the 2005 Order to the extent that it included any fees for services provided to enforce the Guaranty against Levine. Amboy asserted that its second fee application contained no fees even related to litigation with Levine. Makris points to nothing in the record to show that assertion is incorrect. Thus there is no argument that the Bankruptcy Court erred by including some portion of those

3

fees explicitly disallowed by Judge Debevoise's Order.

Second, Judge Debevoise's Order remanded to the Bankruptcy Court to determine the proper fee allocation. The Bankruptcy Court analyzed the proper fee allocation under the standard of 11 U.S.C. § 506(b), which provides that an oversecured creditor may be entitled to attorneys' fees if the fees are: (1) provided for under the agreement under which such claim arose; and (2) reasonable. *Ryker v. Current*, 338 B.R. 642, 651 (D.N.J. 2006), *aff'd*, 2007 WL 2138590 (3d Cir. July 27, 2007); *see also United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989). Neither party challenges that the Bankruptcy Court applied the proper legal standard, so this Court will review only whether the Bankruptcy Court properly complied with Section 506(b).

### i.  The Note provided for the fees sought.

The determination of the legal relations of the parties to a contract is a question of law, thus the Bankruptcy Court's determinations of Makris's responsibilities under the fee provision of the Note are subject to *de novo* review. *See TracindaCorp. v. DaimlerChrysler AG*, 503 F.2d 212, 229 (3d Cir. 2007). Contracts should be construed according to the plain and ordinary meaning of their terms. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004). The disputed fees allowed under the 2009 Order fall into two categories: fees on fees, and fees for services after the amount of the claim was established.

Makris argued that the only "enforcing" Amboy engaged in was setting the amount of its claim against the bankruptcy estate. The Bankruptcy Court considered – and rejected – Makris's narrow reading of the provision. Although some explanation

4

does appear in the corresponding hearing transcripts, the Bankruptcy Court did not explain its reasoning in its opinion accompanying the 2009 Order. On review, the Bankruptcy Court was correct to hold that the provision allowed for the fees sought.

Contrary to Makris's arguments, the language of the agreement is broad: in the event of her default, Makris is responsible for "*all* of [Amboy's] costs and expenses in enforcing this note to the extent not prohibited by applicable law."(emphasis added). As used in the Note, "enforcing" encompasses a range of legal actions, provided those actions seek to "give force or effect" or "compel obedience to" the obligations memorialized in the Note. *See Black's Law Dictionary* 549 (7th ed. 1999) (defining "enforce"). This interpretation of "enforcing" comports with interpretations made by other courts construing the word "enforce" in other contexts. *See, e.g., Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1523 (11th Cir. 1987) (interpreting federal statute); *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1066 (D. Minn. 2008) (interpreting federal statute); *In re Outboard Marine Corp.*, 304 B.R. 844, 862-63 (Bankr. N.D. Ill. 2004) (interpreting Indiana law). And the use of the phrase "*all* of its costs and expenses" indicates that the parties did not intend that the imposed fees would be capped at a certain amount, unlike the Guaranty, where the fees were explicitly capped at 15% of the principal. By this definition, any reasonable actions Amboy took to enforce any of Makris's obligations under the Note would fall under the attorneys' fees provision. *In re West Chestnut Realty of Haverford, Inc.*, cited by Makris, does not suggest a different conclusion because the fees at issue there involved services and facts that Makris has not identified as being at issue here. *See* 186 B.R. 612, 619 (Bankr. E.D. Pa. 1995).

The Bankruptcy Court also allowed Amboy fees for litigating the amount of attorneys' fees it was entitled to under the Note – that is, the Bankruptcy Court allowed fees on fees. Fees on fees are generally allowed under fee-shifting provisions, whether those provisions arise under contract or statute. *See, e.g., Sheet Metal Workers' Intern. Ass'n Local 15, AFL-CIO v. Law Fabrication, LLC*, 237 F. App'x 543, 550 (11th Cir. June 26, 2007); *Northwestern Nat. Life Ins. Co. of Milwaukee, Wisconsin v. Lutz*, 933 F. Supp. 730, 732 (C.D. Ill. 1996); *see also, Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998) (construing fee-shifting statute). Makris does not provide any authority showing that such fees are not part of "enforcing" the Note. To disallow reasonable fees on fees would dilute the value of the fees to which an attorney would otherwise be entitled under the agreement. Therefore, the Bankruptcy Court's allowance of fees on fees was correct.

### ii. The Bankruptcy Court did not abuse its discretion by allowing fees that were unreasonable.

"Fee awards are reviewed for an abuse of discretion, which can occur 'if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award on findings of fact that are clearly erroneous.'" *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 258 (3d Cir.1995) (quoting *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir.1994)). The fact that this Court may have reached a different conclusion does not mean that the Bankruptcy Court abused its discretion. *See United Telegraph Workers, AFL-CIO v. Western Union Corp.*, 771 F.2d 699, 703 (3d Cir.1985) (citing *Citizens to*

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). The reasonableness of a fee request "has two facets: (1) the itemized fees themselves must be reasonable, and (2) the creditor's actions must be reasonable." *In re West Elec., Inc.*, 158 B.R. 37, 40 (Bankr. D.N.J. 1993).

With regard to the Fees-of-Fees litigation and the previous appeal to the district court, the Bankruptcy Court held that these actions were reasonable because Amboy did not engage in aggressive motion practice and did not persist in a completely unjustified defense. Amboy had, in fact, been initially successful at the Bankruptcy Court level and was acting only to preserve its success. The Bankruptcy Court disallowed fees for some other services because they were not sufficiently connected to enforcing the Note.

The Bankruptcy Court then considered the reasonableness of the fees Amboy's counsel incurred. The Bankruptcy Court engaged in a line-by-line review of the fees applied for even though it indicated its disallowances in a summary form and only provided a schedule of representative reductions. After its review, the Bankruptcy Court disallowed several entries as duplicative of other services, reduced the rates charged for certain services, and reduced the number of hours charged on certain other entries. The Bankruptcy Court further reduced the fees for all services provided after December 2007, holding that Amboy should have taken steps to conduct the litigation more efficiently as the overall amount of fees began to rival the value of the debt represented by the Note.

Makris points to no evidence or authority showing that the Bankruptcy Court erred either by applying the incorrect legal standard, failing to follow the proper standard and procedure, or basing its conclusions on erroneous findings of fact. On review, this Court

finds that the Bankruptcy Court's findings and process were proper.

Makris also argues that the fee award was "clearly unreasonable" because it amounted to about fifty percent of the principal debt. But other courts have awarded similar fees under Section 506(b), *see, e.g.*, *In re Corporate Press, Inc.*, No. 03-32669, 2004 WL 2983816, at *2 (Bankr. N.D. Tex. 2004) (allowing fees of nearly 85% of debt sought to be collected), and the award is not so outlandish as to be *per se* unreasonable. *Cf. In re Lund*, 187 B.R. 245, 253-54 (Bankr. N.D. Ill. 1995) (calling requested fee award of more than three times the collected debt "patently unreasonable"). Thus, the Bankruptcy Court did not abuse its discretion in determining that the fee award was reasonable.

### b. The Bankruptcy Court did not err as a matter of law by allowing Amboy to recover attorneys' fees for legal services incurred on issues decided against Amboy's interest.

Makris argues that, as a matter of law, Amboy is not entitled to recover any fees for any motions on which Amboy was not ultimately successful, including the Fees-on-Fees litigation. Makris is wrong. As this Court has held, "[a]ttorneys' fees [under Section 506(b)] will not be denied solely because legal actions taken by a secured creditor are unsuccessful." *Ryker v. Current*, 338 B.R. 642, 651 (D.N.J. 2006), *aff'd*, 2007 WL 2138590 (3d Cir. July 27, 2007). Neither case relied on by Makris compels a different conclusion, as the central issue in both is whether the fees are reasonable in the specific context of each case. *See In re Circle K Corp.*, 165 B.R. 649, 653 (Bankr. Ariz. 1994) (noting that under Section 506 debtors had failed to show that attorney's fees were reasonable); and *In re Williams*, 97 B.R. 330, 332 (Bankr. N.D. Tex. 1989) (holding that

fees sought were unreasonable because they were both unsuccessful and unnecessary). While the holding in *Circle K* contains strict language, *see* 165 B.R. at 653 ("In the present case, all elements are met except reasonableness. . . . Debtors do not pay for the education of the creditor's attorneys or legal fees for issues decided adversely to the creditor.") (citation omitted), it provides no legal reasoning to support such a strong statement, and the only authority it cites is *Williams*. This Court does not agree with such a reading of *Williams*. And in any event, neither *Williams* nor *Circle K* binds the Court in this case. The better rule is that lack of success is not a *per se* bar to fees and costs under Section 506(b), because actions which may ultimately be unsuccessful may still be reasonable at the time they are taken.

### III. Conclusion

For the reasons stated above, the decision of the Bankruptcy Court is **AFFIRMED**. An appropriate Order follows.

          /s/ William J. Martini
          **WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 10, 2011.**